IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KCK PROFESSIONAL FIREFIGHTERS ASSOCIATION, IAFF LOCAL 64, | CIVIL ACTION NO. |
| Plaintiff, | |
| v. | |
| UNIFIED GOVERNMENT OF WYANDOTTE COUNTY AND KANSAS CITY, KANSAS, and | |
| UG BOARD OF COMMISSIONERS, | |
| Defendants. | |

## **VERIFIED COMPLAINT**

In January 2025, the Unified Government of Wyandotte County and Kansas City, Kansas ("UG") reduced the number of fire fighters manning its emergency vehicles. In December of that year, four Kansas City, Kansas Fire Department ("KCKFD") fire fighters were seriously injured while responding to a structure fire. A subsequent investigation concluded that inadequate staffing on emergency vehicles contributed to those injuries.

Plaintiff KCK Professional Firefighters Association, International Association of Fire Fighters Local 64 ("Union" or "Local 64") has repeatedly sought to speak with members of the UG's Board of Commissioners and to appear before the UG's Public Works & Safety Standing Committee ("Public Safety Committee") to discuss how inadequate staffing compromises fire fighters' and the public's safety. But Defendants UG and the Board of Commissioners repeatedly quashed these requests, falsely claiming that state law forbids the Union from speaking to elected officials about issues affecting the KCKFD. The UG's attorney even threatened legal action against the Union if its members tried to speak to the UG about these issues again. This culminated in the

UG and the Board of Commissioners prohibiting the Union from appearing and speaking at the Commission's monthly Public Safety Committee meetings.

The Union therefore brings this action against the UG and the Board of Commissioners for violating the First and Fourteenth Amendment speech rights of Local 64 and its members to speak on matters of paramount public concern. Plaintiff prays for an order from this Court declaring that the UG's policy barring the Union and its members from speaking with their elected representatives and at Public Safety Committee meetings is unlawful and enjoining Defendants from enforcing that policy.

## THE PARTIES

1.      Plaintiff Local 64 is a labor organization representing certain employees of the KCKFD. Plaintiff is a "person" within the meaning of 42 U.S.C. § 1983.

2.      Defendant UG is a consolidated city and county government and is a political subdivision of the State of Kansas. Defendant UG is a "person" within the meaning of 42 U.S.C. § 1983.

3.      Defendant UG Board of Commissioners is comprised of the Mayor/CEO and ten Commission members. The Board of Commissioners has final policymaking authority over Wyandotte County and the City of Kansas City, Kansas. The Board of Commissioners is responsible for setting County policies, adopting ordinances, appropriating funds, approving land re-zonings and special exceptions to the zoning ordinance, carrying out responsibilities set forth by the State Code, setting priorities for budget preparation, and adopting the annual budget of the UG. The Board of Commissioners is a "person" within the meaning of 42 U.S.C. § 1983.

**JURISDICTION AND VENUE**

4.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the Constitution and the laws of the United States, namely the First and Fourteenth Amendments and 42 U.S.C. § 1983.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391, as Plaintiff and all Defendants are located within the District of Kansas, and the events and omissions giving rise to this action occurred within the District of Kansas.

**FACTUAL BACKGROUND**

6.      In August 2024, the UG Board of Commissioners approved a one-year revenue neutral budget, set to take effect from January 1, 2025 through December 31, 2025. As part of the revenue neutral budget, the UG reduced staffing on ladder trucks and other specialty apparatus from four fire fighters—the National Fire Protection Association ("NFPA") standard—to three.

7.      Concerned that the reduction in staffing would persist beyond December 31, 2025, in July 2025, the Union's Executive Board sent a letter to the Mayor and the Board of Commissioners in advance of the UG's discussion on whether to extend the revenue neutral budget.

8.      In the July 2025 letter, the Executive Board expressed its concerns about the lack of critical turnout gear, access to annual cancer screenings for fire fighters, dismal fire station conditions, and the reduction of staff on ladder trucks. The letter highlighted that these issues posed serious risks to the safety of Kansas City fire fighters as well as to the public.

9.      On December 29, 2025, four Kansas City fire fighters were seriously injured by a floor collapse while responding to a fire.

10.      The National Institute for Occupational Safety and Health ("NIOSH") later determined that inadequate staffing on the responding apparatuses contributed to the fire fighters'

injuries. In a written report, NIOSH specifically noted that "NFPA 1750 states that both engine and truck companies should be staffed with a minimum of four on-duty personnel," and that "Staffing pumpers with four personnel, per NFPA 1750, may have allowed for a second firefighter to be prepared to assist in advancing" a second line of attack against the fire. It accordingly recommended that KCKFD ensure adequate staffing is available to respond to emergency incidents.

11.     The UG Board of Commissioners ultimately decided not to extend the revenue neutral budget beyond December 31, 2025. However, despite awareness of the concerns outlined in the Union's July 2025 letter and the December 29, 2025 floor collapse incident, the UG did not allocate funds to increase staffing levels back up to four fire fighters per apparatus.

12.     Accordingly, on February 9, 2026, KCKFD fire fighter John Simma, in his capacity as Local 64 President, sent correspondence to the Board of Commissioners expressing "serious concerns regarding permanent staffing reductions for fire trucks and rescue apparatus."

13.     On March 12, 2026, President Simma emailed the UG Clerk asking to be placed on the agenda for the March 16, 2026, Public Safety Committee meeting to explain, on behalf of the Union, how the UG's staffing decisions compromised public safety. President Simma did not receive a response.

14.     The following day, on March 13, 2026, the Union's Executive Board sent another letter to the Mayor and the Board of Commissioners reiterating its concern that "[o]perating trucks and specialty companies with only three firefighters places unnecessary risk on both the firefighters and the people we serve," and requesting that "four-firefighter staffing be restored to affected apparatus[es] immediately."

15.     Pursuant to Unified Government of Wyandotte County & Kan. City, Kan., Code app. C § 204, the UG's Board of Commissioners holds a recurring monthly meeting of its Public Safety Committee, which is open to the public consistent with the Kansas Open Meetings Act, K.S.A. § 75-4319 ("KOMA").

16.     Defendant UG expressly encourages the public to participate in committee meetings. Its "Engage in Public Commission Meetings" webpage provides: "It is important to remind everyone that the public has the ability to attend Commission meetings in person or virtually, to provide written comments about items already scheduled, to attend meetings to speak on a topic, to request that items be placed on an agenda and to communicate directly with their elected officials."

17.     Comments at committee meetings are limited to the subject of a given agenda item, and disruptive comments are not permitted. Comments are not otherwise restricted.

18.     Nevertheless, on April 7, 2026, Attorney Ryan Denk sent a letter to the Union on behalf of the UG demanding that the Union cease communications with the Mayor and the Board of Commissioners.

19.     In the letter, the UG falsely told the Union that communicating with the Mayor or Commissioners violates a provision in the Kansas Public Employer-Employee Relations Act, Kan. Stat. Ann. § 75-4333(c)(2) ("PEERA"), which forbids unions from "directly contacting members of the governing body to discuss **subjects under negotiation**." (emphasis added). Mr. Denk further asserted that any additional communications from the Union seeking to speak with Commissioners or at public meetings of the Public Safety Committee was "unacceptable and susceptible to possible legal action."

20.     The Union was not negotiating with the UG or KCKFD at the time the Union requested to speak to the Public Safety Committee. And public employees' First Amendment right to participate in public discussion of public business, even regarding matters that are the subject of negotiations between labor and management, has been clearly established for half a century.[1]

21.     Counsel for the Union and for the International Association of Fire Fighters ("IAFF"), the international labor organization to which Local 64 is affiliated, each responded to the UG's letter, advising that the Union's communications with the UG did not violate PEERA and are protected by the First Amendment.

22.     On May 11, 2026, President Simma again emailed the UG Clerk requesting that the Union be placed on the agenda for the May 18, 2026 Public Safety Committee meeting.

23.     The following day, May 12, 2026, Mr. Denk sent correspondence to counsel for the Union and IAFF Legal Counsel reiterating the UG's position that the Union's communications with elected officials violate PEERA and that any discussion regarding staffing decisions must take place as part of the meet and confer process with the UG's chosen bargaining representatives.

24.     On May 14, 2026, Commissioner Andrew Kump, the Chair of the Public Safety Committee, denied the Union's request to speak before the Committee due to the "risk of disclosing potentially privileged/private matters in a public meeting and the ongoing discussion between the Union and the UG." He did not explain what "privileged/private matters" that the Union could possibly disclose or why "the ongoing discussion between the Union and the UG" prevented the Union from speaking at a publicly accessible meeting.

---

[1] *Madison Joint School Dist. v. Wis. Emp't Relations Comm'n*, 429 U.S. 167, 175 (1976) ("Regardless of the extent to which contract negotiations between a public body and its employees may be regulated . . . the participation in public discussion of public business cannot be confined to one category of interested individuals . . . . Whatever its duties as an employer, when the board sits in public meetings to conduct public business and hear the views of citizens, it may not be required to discriminate between speakers on the basis of their employment, or the content of their speech.").

25.     The UG has begun its budget approval process for the 2027 fiscal year and is set to finalize the budget on September 1, 2026. The next Public Safety Committee meeting, and the last one before the budget is finalized, is scheduled for August 17, 2026.

26.     Defendants UG and the Board of Commissioners intend to continue denying Local 64 and its members the right to communicate with their elected officials regarding their health and safety concerns because of who the Local 64 members are, whom they associate with, and because of the proposed or expected content of their speech.

27.     Accordingly, the Union has been effectively barred from addressing issues of substantial concern to the public with elected officials and advocating for a budget that addresses major, well-documented safety concerns affecting the KCKFD and members of the public.

## <u>COUNT I</u>

**42 U.S.C. § 1983 – Prior Restraint in Violation of Plaintiff's Right to Free Speech Pursuant to the First and Fourteenth Amendments to the United States Constitution**
(Plaintiff v. Defendant UG)

28.     Plaintiff incorporates by reference the allegations in Paragraphs 1-27, as if fully set forth herein.

29.     The First and Fourteenth Amendments to the United States Constitution protect public employees' right to speak as private citizens on matters of public concern and to be free from retaliation from their public employers for doing so.

30.     Safe and efficient operation of fire departments; fire prevention, safety, and response; safe and adequate working conditions for fire fighters; and employers' knowing exposure of employees and the public to safety hazards are all clearly established matters of public concern as a matter of law.

31.     The staffing level in the KCKFD is a matter of particular public concern because it deviates from national safety guidelines, impairs KCKFD's provision of services, exposes KCKFD fire fighters and the public to harm, and, on December 29, 2025, contributed to four KCKFD fire fighters' injuries.

32.     Speech by KCKFD fire fighters on these matters holds special value precisely because their public employment has provided them with the knowledge of how UG staffing decisions affects KCKFD's provision of emergency response services to the community.

33.     By telling the Union that "further direct communication with the elected members of the [UG] . . . is unacceptable and susceptible to possible legal action," the UG promulgated an official policy prohibiting the Union and its members from speaking to their elected officials about matters affecting KCKFD and the public.

34.     By prohibiting the Union and its members from speaking to their elected officials about matters affecting KCKFD and the public, the UG unconstitutionally prohibits a substantial amount of private speech on matters of public concern, and it prohibits such speech in the exact forum in which the public deliberates and acts.

35.     By threatening legal action against the Union and its members for speaking to their elected officials, the UG unlawfully chills KCKFD fire fighters from speaking as private citizens on matters of public concern. Consequently, the public and the Public Safety Committee are deprived of fire fighters' informed opinions about the public safety consequences of KCKFD's understaffing.

36.     The UG's policy of prohibiting the Union and its members from speaking to their elected officials is accordingly an unlawful overbroad prior restraint on speech in violation of the First and Fourteenth Amendments.

8

## COUNT II

### 42 U.S.C. § 1983 – Content-Based Discrimination in Violation of Plaintiff's Right to Free Speech Pursuant to the First and Fourteenth Amendments to the United States Constitution
(Plaintiff v. All Defendants)

37.    Plaintiff incorporates by reference the allegations in Paragraphs 1-36, as if fully set forth herein.

38.    Defendant UG has opened the regular meetings of the Public Safety Committee to public speech, thus making those meetings a designated public forum wherein members of the public may request to speak on topics related to public works and safety and comment on matters on the Committee's agenda.

39.    Local 64 President Simma properly requested that the Union's members be permitted to appear before the UG Public Safety Committee at its March 16, 2026 and May 18, 2026 meetings to address a matter of public concern: how ongoing reductions in staffing present a clear safety issue for the public and KCKFD fire fighters.

40.    On May 14, 2026, the Chair of the Public Safety Committee, denied the Union's request to speak before the Committee, citing unsubstantiated concerns about the disclosure of private/privileged materials.

41.    In so doing, Defendant UG Board of Commissioners deprived Local 64 and its members of their First Amendment speech rights pursuant to the UG's official policy of prohibiting the Union from discussing matters related to KCKFD with the Public Safety Committee. The policy was the moving force behind the Board of Commissioners' deprivation of the Union's and its member's speech rights.

42.    By prohibiting members of the Union from speaking in an open public forum on topics related to the impact staffing reductions have had, and will continue to have, on fire fighter

9

and public safety, Defendants have deprived Plaintiff and its members of their rights to speech, association, and to petition their government as protected by the First Amendment and unreasonably restricted speech in a public forum because of the content of the speech and the identity of the speakers and their membership in a labor union.

43.    Any content-based restrictions during the Public Safety Committee's meetings are subject to strict scrutiny, must serve a compelling state interest, and must be narrowly drawn to achieve that purpose.

44.    Defendants' policy that the Union cannot speak at the Public Safety Committee's meetings is a content-based restriction, that does not serve a compelling state interest, and that is not narrowly tailored to the pursuit of a compelling state interest and therefore violates the First and Fourteenth Amendments.

45.    The Board of Commissioners' decision to deny the Union's request to speak, based on the UG's official policy, is a content-based restriction, that does not serve a compelling state interest, and that is not narrowly tailored to the pursuit of a compelling state interest and therefore violated the First and Fourteenth Amendments.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests this Court to:

A. Enter judgment in favor of the Plaintiff and against Defendants;

B. Declare that the UG's policy of prohibiting the Union and its members from speaking before the Public Safety Committee or otherwise speaking with their elected officials regarding the understaffing of apparatuses in the KCKFD and other matters of public concern violates the First and Fourteenth Amendments;

C. Preliminarily and permanently enjoin Defendants from enforcing this policy;

10

D.  Grant Plaintiff its attorneys fees and costs pursuant to 42 U.S.C. 1988; and

E.  Award any and all other relief the Court finds just and proper.

Respectfully submitted,

**GRISSOM MILLER LAW FIRM, LLC**

/s/ Jake Miller
Jacob Miller, KS #28337
Grissom Miller Law Firm, LLC
1600 Genessee Street, Ste. 460
Kansas City, MO 64102
T – 816-336-1213
F – 816-384-1623
jake@grissommiller.com

*Counsel for Plaintiff*

/s/ Tamara Y. Imam
Tamara Y. Imam
(*Pro Hac Vice application forthcoming*)
Mooney, Green, Saindon, Murphy & Welch, P.C.
1620 Eye Street NW, Suite 700
Washington, DC 20006
timam@mooneygreen.com

*Counsel for Plaintiff*

## VERIFICATION

I, John J. Simma, as an authorized representative of Plaintiff KCK Professional Firefighters Association, International Association of Fire Fighters Local 64, declare pursuant to 28 U.S.C. § 1746 and the penalties of perjury that the facts stated herein are true and correct to the best of my knowledge and experience.

John J. Simma
Authorized representative of Plaintiff

Executed on: _8-4_, 2026

11