IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| KCK PROFESSIONAL FIREFIGHTERS ASSOCIATION, IAFF LOCAL 64, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 26-CV-02457-TC-JBW |
| UNIFIED GOVERNMENT OF WYANDOTTE COUNTY/ KANSAS CITY, KANSAS, and | ) ) ) ) | |
| UG BOARD OF COMMISSIONERS, | ) ) | |
| Defendants. | ) | |

## RESPONSE IN OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

The Defendants, Unified Government of Wyandotte County/Kansas City, Kansas (Unified Government) and UG Board of Commissioners, provide the following response in opposition to the Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction pursuant to Fed. R. Civ. P. 65.

## I.    LEGAL STANDARD.

The parties are in agreement as to the legal standard as detailed in Plaintiff's Memorandum in Support. *See* Doc. #5 at pg. 5.

## II.    PLAINTIFF IS UNLIKELY TO SUCCEED UPON THE MERITS.

### A.    Plaintiff's Complaint Must be Read in Context with Its Collective Bargaining Obligation Under State Law.

The plaintiff, IAFF L. 64, and the Defendant, Unified Government are parties to a collective bargaining relationship.  Specifically, the Unified Government has elected to come under the purview of the Kansas Public Employer-Employee Relations Act, K.S.A. 75-4321, et seq.

1

(PEERA).   Plaintiff is the recognized bargaining representative for all sworn and non-sworn employees of the Kansas City, Kansas Fire Department of the rank of Captain and below, exclusive of supervisory, elected and management employees as defined by PEERA. Doc. #1, ¶ 1. Doc. #6-8, MOA, pg. 1, Art. 2, Recognition.  There is an active collective bargaining agreement between the parties, referred to as the Memorandum of Agreement, covering calendar years 2025-2027 (MOA). *Id.*  The MOA at Article 35 contains a minimum staffing requirement which includes, among other things, that the Fire Department maintain: (1) minimum numbers of fire suppression staff per shift - 78 employees, except in cases of emergency, then 74 employees during emergency; and, (2) minimum numbers of fire suppression personnel on each type of Fire Department rig: pumpers – 3 employees; aerials and quints – 4 employees except in case of emergency, then 3 employees. *Id.*, Art. 35, pg. 59.  "Emergency" is specifically defined to include "personnel absences due to unscheduled leaves." *Id.*  Plaintiff's Complaint makes clear that Plaintiff's desired communications with the Unified Government's elected officials relates to the subject of staffing, a subject specifically addressed by the active MOA between the parties. Doc. #1, pg. 1 (desire to be placed on the agenda before Public Safety Committee to discuss "inadequate staffing"), pg. 4, ¶ 13 (March 12, 2026 request to address Public Safety Committee to address "staffing decisions"), pg. 6, ¶ (May 11, 2026 request to be placed on agenda).

When Plaintiff requests to be placed on the agenda to effectively negotiate additional budget for staffing, which is a subject negotiated and encompassed within the parties active collective bargaining agreement, the Plaintiff is attempting to circumvent the representatives of the Unified Government who have been properly designated under PEERA to serve as the exclusive bargaining representative on behalf of the Unified Government relative to subjects of collective bargaining.  PEERA mandates that "where an employee organization has been certified

by the Board as representing a majority of the employees in an appropriate unit, or recognized formally by the public employer pursuant to the provisions of this act, the appropriate employer shall meet and confer in good faith with such employee organization in the determination of conditions of employment of the public employees as provided in this act." K.S.A. 75-4327; *IAFF, L. 179 v. City of Hutchinson,* PERB Case No. 75-CAE-1-2011, pg. 28 (2012) (attached hereto as Exhibit 1), PEERA further places the burden to meet and confer regarding conditions of employment with the designated representative of the other party. *See* K.S.A. 75-4333(b)(5) (making it a prohibited practice for a public employer to: "(5) refuse to meet and confer in good faith with representatives of recognized employee organizations as required in K.S.A. 75-4327, and amendments thereto"); (c)(3) (making it a prohibited practice for a public employer to: "(3) refuse to meet and confer in good faith with a public employer as required in K.S.A. 75-4327, and amendments thereto").

### 1. *City of Junction City, Kansas v. Junction City Police Officers Association.*

It is this obligation to meet and confer with the respective bargaining representative of the other party relied upon by the Kansas Public Employer-Employee Relations Board hearing officer in *City of Junction City, Kansas v. Junction City Police Officers Association,* PERB Case No. 75-CAEO-2-1992 (1992) (attached hereto as Exhibit 2), finding that a union's direct communication with elected officials regarding subjects of bargaining constituted a prohibited practice under PEERA. *Junction City* involved a union business representative's direct communication with three individual city council members by phone to discuss subjects of bargaining including wages, grievance procedure and off-duty employment. *Id.* at pgs. 11-13, Findings ¶ 30-39. In *Junction City*, the hearing officer made the following finding,

"PROHIBITED PRACTICES - Bypassing Chosen Representative. The bypassing of the public employer's chosen meet and confer representative by employee organization officials directly contacting members of the governing body to discuss subjects under negotiation constitute a violation of K.S.A. 75-4333(c)(2) as interfering with respect to selecting a representative for the purpose of meeting and conferring or the adjustment of grievances."

The union in the *Junction City* matter, like the Union here relied upon First Amendment arguments in support of their claimed right to circumvent the designated representative of a public sector employer covered by PEERA and make direct contact with elected officials regarding subjects of bargaining.  In *Junction City,* the hearing officer dispatched with such First Amendment objections in reliance upon two U.S. Supreme Court cases *Minnesota State Board for Community Colleges v. Knight,* 465 U.S. 271 (1984) and *City of Madison, Joint School Dist. No. 8 v. Wisconsin Employment Relations Commission,* 429 U.S. 167 (1976).

### 2. *City of Madison, Joint School Dist. No. 8 v. Wisconsin Employment Relations Commission*

*City of Madison* addressed whether a decision of the Wisconsin Supreme Court of a violation of the Wisconsin public bargaining statute premised upon the City's receipt of public comment from a non-union teacher, over the union's objection, relating to a subject of bargaining at a regularly scheduled, open public meeting during a general public comment section of the meeting, which was unconstrained as to topic, violated the First Amendment.  The Supreme Court found that the open public comment section of the meeting created an open public forum and therefore, could not be restricted as to subject thus overruling the Wisconsin Supreme Court.[1] As discussed *infra,* neither the Unified Government Public Works and Safety Committee meeting nor

---

[1] Despite holding that there was an open forum under the facts of *City of Madison,* the Court did recognize in a footnote that, "Plainly, public bodies may confine their meetings to specified subject matter and may hold nonpublic sessions to transact business." 429 U.S. at 175 n. 8.

4

the Unified Government Commission meetings create an open public forum as was found in *City of Madison.*

The *Junction City* hearing officer recognized the holding in *City of Madison* which permits public employees to provide public comments regarding working conditions in the event that a governing body creates an open public forum. Ex. 2, *Junction City,* at pgs. 58-59.  The hearing officer however notes that *City of Madison* limits such expression in the public bargaining context stating as follows,

> The mere expression of an opinion at a public forum, i.e. City council meeting, about a matter subject to collective bargaining, whether or not the speaker is a member of the bargaining unit, poses no genuine threat to the policy of exclusive representation expressed in PEERA, ***provided the speaker does not seek to reach an agreement or bargain with the governing body.*** *See Madison School Dist. v. Wisconsin Emp. Rel. Comm'n,* 429 U.S. at 180 (Stewart, J., concurring).

Ex. 2, *Junction City,* at pg. 59 (emphasis added).

The indications from Plaintiff's Complaint suggest that the Union does intend to bargain and reach agreement with the governing body of the Unified Government on the issue of staffing. *See* Doc. #1 ¶ 11 (stating that despite awareness of the Union's staffing requests, the UG did not allocate funds to increase staffing beyond the contractual minimums to four fire fighters per apparatus); ¶ 12 (Due to the failure to allocate funds for additional staffing, Local 64 President sent a letter to UG Commission expressing concerns regarding staffing); ¶ 13 (Budget decision on staffing prompted Local 64 President to request to be placed on the Public Works and Safety Committee agenda); ¶ 25 ("The UG has begun its budget approval process for the 2027 fiscal year and is set to finalize the budget on September 1, 2026.  The next Public Safety Committee meeting, and the last one before the budget is finalized, is scheduled for August 17, 2026.").

Plaintiff's Complaint concedes that the Public Safety Committee is not an open public forum. Doc. #1, pg. 5, ¶ 17 ("Comments at committee meetings are limited to the subject of a

5

given agenda item, and disruptive comments are not permitted.")  Additionally, as recognized by the union's counsel, within Jake Miller's April 14, 2026 letter, an open public forum is not the scenario which the parties are presented with under the present circumstances. Doc. # 6-8. Specifically, Mr. Miller's correspondence states as follows, "Due to the Commission changing their rules from allowing public comment at the Commission meetings the only public alternative to them would be in front of the Public [Works and] Safety Committee;" and "Local 64 has been denied in their requests to address the Commission's Public [Works and] Safety committee." *Id.*

*City of Madison* more importantly to the present case rejected the notion that elected officials are compelled to create a public forum outside of a state created meet and confer process to receive public comment relative to mandatory subjects of bargaining.  This was recognized in the majority holding which stated, "Plainly, public bodies may confine their meetings to specified subject matter and may hold non-public sessions to transact business." 429 U.S. at 175 n. 8. This was expanded upon by Justice Brennan when he states as follows,

> "Wisconsin has adopted, as unquestionably the State constitutionally may adopt, a statutory policy that authorizes public bodies to accord exclusive recognition to representatives for collective bargaining chosen by the majority of an appropriate unit of employees. In that circumstance the First Amendment plainly does not prohibit Wisconsin from limiting attendance at a collective-bargaining session to school board and union bargaining representatives and denying Holmquist the right to attend and speak at the session. That proposition is implicit in the words of Mr. Justice Holmes, that the "Constitution does not require all public acts to be done in town meeting or an assembly of the whole." *Bi-Metallic Investment Co. v. State Board of Equalization,* 239 U.S. 441, 445, 36 S.Ct. 141, 142, 60 L.Ed. 372 (1915). Certainly in the context of Wisconsin's adoption of the exclusivity principle as a matter of state policy governing relations between state bodies and unions of their employees, "(t)here must be a limit to individual argument in such matters if government is to go on." *Ibid.* For the First Amendment does not command "that people who want to (voice) their views have a constitutional right to do so whenever and however and wherever they please." *Adderley v. Florida,* 385 U.S. 39, 48, 87 S.Ct. 242, 246, 17 L.Ed.2d 149 (1966). For example, this Court's "own conferences (and) the meetings of other official bodies gathered in executive session" may be closed to the public without implicating any constitutional rights whatever.

6

*Branzburg v. Hayes,* 408 U.S. 665, 684, 92 S.Ct. 2646, 2658, 33 L.Ed.2d 626 (1972). Thus, the Wisconsin Supreme Court was correct in stating that there is nothing unconstitutional about legislation commanding that in closed bargaining sessions a government body may admit, hear the views of, and respond to only the designated representatives of a union selected by the majority of its employees."

429 U.S. at 178.

*City of Madison* supports the proposition that the Unified Government is entitled to insist that the appropriate forum for the discussion of subjects of collective bargaining is through the parties duly designated bargaining representatives through the statutory bargaining process within PEERA.  The Plaintiff is insisting on what the *City of Madison* says they are not entitled to insist upon – that they be able to voice their views "whenever, however and wherever they please." Specifically, Plaintiff is demanding that it not only be able to speak at the Unified Government Public Works and Safety Committee meeting, but that they are actually placed on the agenda as a business item for the Committee to consider.

### 3. *Minnesota State Board for Community Colleges v. Knight.*

The other Supreme Court case cited within *Junction City*, *Minnesota State Board for Community Colleges v. Knight,* addressed the constitutionality of a Minnesota statute requiring public employers to engage in official exchanges of views only with a recognized public bargaining representative on policy questions relating to employment but outside of the scope of mandatory bargaining.  The plaintiffs in Knight were 20 faculty members who claimed that the law infringed upon their First Amendment rights.  The *Knight* Court rejected the plaintiffs' claims holding in pertinent part as follows,

> "Appellees do not and could not claim that they have been unconstitutionally denied access to a public forum. A "meet and confer" session is obviously not a public forum.
>
> . . .

"Meet and confer" sessions are occasions for public employers, acting solely as instrumentalities of the state, to receive policy advice from their professional employees. Minnesota has simply restricted the class of persons to whom it will listen in its making of policy. ***Thus, appellees' principal claim is that they have a right to force officers of the state acting in an official policymaking capacity to listen to them in a particular formal setting.***

.   .   .

***Policymaking organs in our system of government have never operated under a constitutional constraint requiring them to afford every interested member of the public an opportunity to present testimony before any policy is adopted.***

.   .   .

Here the government "meets and confers" with the union and not with individual employees. The applicable constitutional principles are identical to those that controlled in Smith. When government makes general policy, it is under no greater constitutional obligation to listen to any specially affected class than it is to listen to the public at large.

.   .   .

If it is rational for the state to give the exclusive representative a unique role in the "meet and negotiate" process, as the summary affirmance in appellees' appeal in this case presupposes, it is rational for the state to do the same in the "meet and confer" process. The goal of reaching agreement makes it imperative for an employer to have before it only one collective view of its employees when "negotiating." [citation omitted]. Similarly, the goal of basing policy decisions on consideration of the majority view of its employees makes it reasonable for an employer to give only the exclusive representative a particular formal setting in which to offer advice on policy.

.   .   .

The District Court erred in holding that appellees had been unconstitutionally denied an opportunity to participate in their public employer's making of policy. Whatever the wisdom of Minnesota's statutory scheme for professional employee consultation on employment-related policy, in academic or other settings, the scheme violates no provision of the Constitution."

465 U.S. 280-292 (Emphasis added).

*Knight,* like *City of Madison,* supports the proposition that the Unified Government is entitled to insist that the appropriate forum for the discussion of subjects of collective bargaining is through the parties duly designated bargaining representatives through the statutory bargaining process within PEERA and that the Unified Government is not required to create an alternative public

8

forum of the Plaintiff's choosing for them to express their views "whenever, however and wherever they please."

### 4.  *Unified School District 501 Topeka v. NEA-Topeka.*

The *Junction City* hearing officer relied in part on *Unified School District 501 Topeka v. NEA-Topeka,* PNA Case Nos. 72-CAEO-1-1982 & 72-CAEO-3-1981 (July 19, 1983), a case decided under the companion law to PEERA, the Kansas Professional Negotiations Act (PNA), which governs school teacher collective bargaining for primary and secondary education. *Junction City* notes that "the recognition and exclusivity rights of the certified employee organization provided in PEERA and the PNA are the same, and the pertinent language of K.S.A. 75-4333(c)(3) is identical to the language of K.S.A. 72-5430(c)(2)." Ex. 2, *Junction City,* at pg. 61.  In *USD 501,* the Secretary of Labor for the State of Kansas determined that bypassing of the School Board's chosen bargaining representative by union officials directly contacting Board members to discuss subjects of bargaining constituted a violation of K.S.A. 72-5433(c)(2) as interfering "with respect to selecting a representative for the purpose of professional negotiations or the adjustment of grievances." *Id.* at 61.  The Secretary found as follows,

> In summary, it is clear that both parties have the right to designate a representative for negotiations purposes. Furthermore, it is a prohibited practice for either party to interfere with the other party's selection of their representative.
>
> It is a well-established principle that the designation of a representative by the parties is accompanied by rights of exclusivity for negotiations purposes. The examiner is of the opinion that the legislature intended to give both parties the right to exclusive representations.
>
> [I]n the instant case, NEA-Topeka claims that the association retains the right to communicate directly with the board, regarding negotiation matters, thereby circumventing the designated representative of the board.
>
> [T]he examiner is of the opinion that the legislature fully intended to embody the general principles of labor relations when they enacted the Professional Negotiations Act. The legislation protects the rights of teachers to organize and

negotiate, through representatives of their own choosing. The school board also has the right to designate a representative. [M]ost importantly, ·once a school board has designated a representative, that representative is the exclusive representative of the board for negotiations purposes, unless the board indicates to the contrary.

[t]he examiner believes that the association cannot be negotiating in good faith with the representative of the board if it is simultaneously negotiating directly with the Board. This would also deny the Board the right to designate a representative for negotiation purposes; a right expressly granted by the statute."

*Id.* at pg. 61-62.

### 5. The existence of a current collective bargaining agreement does not relieve the Plaintiff of its obligation to negotiate with the UG's designated representative.

Plaintiff argues that the lack of active contract negotiations between the parties, somehow relieves them of the legal obligation to negotiate with the designated bargaining representative of the Unified Government.  This argument is simply unsupported legally.  Decisions of PERB have found a duty to meet and confer in good faith over conditions of employment when the parties were not in active contract negotiations. *See e.g  Ex. 3, PSU/KNEA v. Kansas Board of Regents/Pittsburgh State University,* PERB Case No. 75-CAE-23-1998 (Duty to meet and confer in good faith applied to KBOR's unilateral revision of intellectual property policy outside of negotiations); *Ex. 4, IAFF, L. 3309 V. City of Junction City,* PERB Case No. 75-CAE-4-1994 (1994) (Duty to meet and confer in good faith applied to City's unilateral change to vacation leave procedures outside of negotiations); *Ex. 5, KAPE v. State of Kansas, Department of Corrections,* PERB Case No. 75-CAE-17-1993 (1993) (Duty to meet and confer in good faith applied to employer's unilateral change to roll call and breaks outside of negotiations). Indeed, part of the *Junction City* case related to changes to conditions of employment outside of contract negotiations. Ex. 2, *Junction City,* pg. 15, ¶¶ 46 – 58. There the City adopted a resolution which purported to change grievance procedures for all City employees, including the members of the bargaining unit represented by the therein petitioner, the Junction City Police Officers Association. *Id.*

10

In *NAGE L. R14-141 v. Department of SRS – Topeka State Hospital*, the hearing officer addressed the obligation to meet and confer in good faith outside of contract negotiations over 'conditions of employment' which are not addressed in a memorandum of agreement. See Ex. 6, PERB Case Nos. 75-CAE-5-1989, 75-CAE-6-1989, 75-CAE-8-1989 (1989).   In this case the hearing officer arrived at the following conclusion,

> [I]t appears clear to the examiner that once the employees are represented by a 'recognized employee organization' the statute [PEERA] mandates exhaustion of the meet and confer process prior to the establishment or change in any 'condition of employment' whether that condition appears in a previous memorandum of agreement or not. It further appears to the examiner that the above conclusion is the only one which would serve to fulfill the stated statutory intent of the development of harmony and cooperation between public employers and their employees through full communication regarding grievances and disputes relating to conditions of employment. And finally, it appears to the examiner that the only exemption from the above stated requirement to bargain would be during those times when emergency conditions would dictate immediate actions to fulfill the mission of the agency.
>
> It is therefore the finding of the examiner that the act mandates the exhaustion of the meet and confer process over all 'conditions of employment' as defined at K.S.A. 75-4322(t) prior to their unilateral change, except, in cases of emergency where delay would prohibit fulfillment of the mission of the agency.

*Id.*

The foregoing legal precedent clearly establishes an ongoing legal obligation to meet and confer with the designated bargaining representative for the other party regarding subjects of bargaining, whether or not the parties are in active contract negotiations.

Finally, on this subject, the Plaintiff's own grievances within the last 6 or 7 years demonstrate the Plaintiff's rejection of its own argument.   During this time, the parties were in active contract negotiations at times and they were not in active negotiations at other times. Nonetheless, all of the below grievances demand that the employer meet and confer in good faith with the designated representatives of the union over subjects which the Plaintiff asserted were mandatory subjects of bargaining.

Grievance Nos.:

- 26-2 (alleging unilateral changes to sick leave and asserting that the employer "avoided its obligation to collectively bargain with the exclusive bargaining agent regarding terms and conditions of employment.");
- 25-12 (alleging unilateral changes to "terms and conditions of employment established by Fire Department policies 1-202 Recruit Academy Rules and 1-304 Probationary Firefighter Continuing Training," and demanding as a remedy that the Department rescind the policies and "bargain collectively with the recognized bargaining agent over terms and conditions of employment.");
- 23-10 and 521 (alleging "The employer has avoided its obligation to bargain collectively with the exclusive bargaining agent over mandatory subjects of bargaining including but not limited to FMLA and Sick Leave.");
- 25-9 (alleging the employer unilaterally developed and implemented a discipline policy which are "terms and conditions of employment which are mandatory subjects of bargaining" and demand as a remedy that the policy be rescinded and to "bargain collectively with the recognized bargaining agent over terms and conditions of employment.");
- 520 (alleging relative to completion of acting-FAO packet for eligibility for attendance at FAO certification course that "The employer has avoided its obligation to bargain collectively with the exclusive bargaining agent regarding terms and conditions of employment.");
- 516 (alleging that the employer improperly and unilaterally created criteria regarding college incentive pay);
- 504 (alleging the employer unilaterally forced employees with covid exposure to use sick as well as previously scheduled leaves asserting "By virtue of this unilateral action, the employer has avoided its obligation to bargain collectively with the exclusive bargaining agent regarding terms and conditions of employment.");
- 497 (alleging relative to the denial of an award day "The employer has avoided its obligation to bargain collectively with the exclusive bargaining agent regarding terms and conditions of employment.");
- 493 (alleging relative to the "unilateral creation and development of Driver's promotional examination guidelines" that "the employer has avoided the obligation to bargain collectively with the exclusive bargaining agent regarding terms and conditions of employment.");
- 481 (alleging "The employer has unilaterally implemented an EMS transport staffing system.");
- 455 (alleging the employer's "unilateral creation and development of the attached unreasonable General Order, Floor Watch (GO 204-03)" asserting that "The employer has

avoided its obligations to collectively bargain with the exclusive bargaining agent regarding terms and conditions of employment.");

- 454 (alleging the employer's "unilateral creation and development of unreasonable Rules and Regulations and the Code of Professional Conduct" asserting that "The employer has avoided the obligation to bargain collectively with the exclusive bargaining agent regarding terms and conditions of employment.").

Ex. 7, IAFF Grievances.

These grievances combined with the Union's position in this case reflect that the Union holds a double standard. It demands that the Employer meet and confer in good faith with the designated representatives of the Union over changes to subjects which it claims are mandatory subjects of bargaining. However, it is unwilling to hold itself to the same legal standard and recognize its legal obligation to meet and confer in good faith with the designated representatives of the Unified Government, so that it and its representatives can circumvent the Unified Government's designated representatives and have direct negotiations with the elected officials of the Unified Government. This double standard has no legal basis.

### B. Relief Sought by Plaintiff is an Order Compelling Defendant to Create a Public Forum that Does Not Exist.

Plaintiff is unlikely to succeed on the merits as the relief sought by Plaintiff - the creation of a public forum that does not currently exist – constitutes relief which the Supreme Court has recognized that a local unit of government is not compelled to provide. At the core of the Plaintiff's claims in this case lies Plaintiff's demand that the Defendant Unified Government create a public forum at which it could negotiate additional budget authority for staffing within the Fire Department, which discussed *supra,* is a matter specifically addressed by Article 35 of the MOA between the parties. Specifically, Plaintiff notes that it requested to be placed on the Unified Government's Public Safety Committee's March 16, 2026 agenda to discuss "how the UG's staffing decisions compromised public safety." Doc. 1, at ¶ 13. Plaintiff then notes that it again

requested to be placed on the May 18, 2026 Public Safety Committee agenda, which request was denied. Doc. # 1, ¶¶ 22-24.  Finally, Plaintiff notes that the next Public Safety Committee meeting is scheduled for August 17, 2026, which it asserts is the last meeting prior to budget adoption. Plaintiff asserts that the Defendants' denial of their request to set an agenda item on the Public Safety Committee constituted a violation of the Plaintiff's First Amendment rights asserting that,

"42.    By prohibiting members of the Union from speaking in an open public forum on topics related to the impact staffing reductions have had, and will continue to have, on fire fighter and public safety, Defendants have deprived Plaintiff and its members of their rights to speech, association, and to petition their government as protected by the First Amendment[.]" Doc. # 1, ¶ 42.

The essence of the Plaintiff's demand for relief in this case is to seek to compel the Defendants to create a public forum which does not currently exist for the Plaintiff to directly negotiate over staffing, a matter addressed by the MOA.  The U.S. Supreme Court on requests similar to Plaintiff's, has conclusively determined that the First Amendment does not require what the Plaintiff is requesting.

### 1.  Open Public Forum vs. Designated or Limited Public Forum.

Supreme Court First Amendment jurisprudence draws a clear distinction between open public forums, where largely any type of speech is permissible and designated or limited public forums, where the scope of permissible speech may be limited.  Plaintiff's Complaint seems to recognize that the public comment portion of the Public Works and Safety Committee meeting is a limited public forum.  Specifically, the Complaint at paragraph 17 states as follows: "Comments at committee meetings are limited to the subject of a given agenda item, and disruptive comments

14

are not permitted." A limitation of public comments to the subject of a given agenda item, often referred to as a "germaneness" requirement supports the conclusion of the existence of a limited public forum.

### a. Legal analysis of the nature of the forum under the First Amendment.

In *Spiehs v. Larsen, et al.,* 728 F. Supp. 3d 1190 (D. Kan. 2024) Judge Robinson addressed a very similar legal challenge to that presented in the present case. There a citizen was challenging decorum and germaneness requirements to the public comment period at the City of Lawrence City Commission meeting. Judge Robinson laid out the legal analysis required in assessing the Constitutionality of such requirements,

> To analyze a First Amendment challenge, courts follow three-steps: (1) determining whether the speech in question is protected; (2) identifying the status of the forum "because that determination dictates the extent to which the government can restrict First Amendment activities"; and (3) determining "whether the proffered justifications for prohibiting speech in the forum satisfy the requisite standard of review." *Verlo v. Martinez,* 820 F.3d 1113, 1128 (10th Cir. 2016) (*citing Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.,* 473 U.S. 788, 797 (1985)). . . .
>
> "The existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 44 (1983). The Supreme Court has identified three categories of fora: (1) traditionally public fora; (2) designated public fora; and (3) non-public fora. *Id.* at 45-46. Traditionally public fora are places which "have immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Id. at 45 (quoting Hague v. CIO,* 307 U.S. 496, 515 (1939)). In traditionally public fora, like parks and streets, the government's rights to restrict expressive activity "are sharply circumscribed" and must satisfy strict scrutiny. *Id.*
>
> Designated public fora are "created when the government 'intentionally open[s] a nontraditional public forum for public discourse.' " *Shero v. City of Grove,* 510 F.3d 1196, 1202 (10th Cir. 2007) (*quoting Ark. Educ. Television Comm'n v. Forbes,*

523 U.S. 666, 677 (1998)). Infringement on speech at a designated public forum is subject to the same strict scrutiny as traditional public fora. *Id.* If a property is "generally available to a certain class of speakers," courts have found a designated public forum to exist. *Forbes,* 523 U.S. at 679. In contrast, a non-public forum is "[p]ublic property which is not by tradition or designation a forum for public communication." *Perry,* 460 U.S. at 46. "Control over access to a nonpublic forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.,* 473 U.S. 788, 806 (1985) (citing *Perry,* 460 U.S. at 49, 103 S.Ct. 948).

Relevant here, there is a sub-category of the non-public forum called a "limited public forum," which "arises where the government allows selective access to some speakers or some types of speech in a nonpublic forum, but does not open the property sufficiently to become a designated public forum." *Shero,* 510 F.3d at 1202 (*quoting Summum v. City of Ogden,* 297 F.3d 995, 1002 n.4 (10th Cir. 2002)). If the government restricts speech in a limited public forum, the restriction "must only be reasonable in light of the purpose served by the forum and be viewpoint-neutral." *Id.* at 1202–03 (*citing Rosenberger v. Rector & Visitors of Univ. of Va.,* 515 U.S. 819, 829 (1995)).

The issue here is whether the City Commission meetings qualify as designated public fora or limited public fora. If the meetings are designated public fora, then the germane and decorum standards must satisfy strict scrutiny. *Id.* at 1202. Therefore, the question would be whether the standards are narrowly tailored to serve a compelling government interest. *Id.* If the meetings are limited public fora, then the two standards are valid so long as they are "reasonable in light of the purpose served by the forum and ... viewpoint-neutral." *Id.*

The Tenth Circuit has declined to decide whether city council meetings fall under either definition. Instead, in cases which have squarely raised the issue, the Tenth Circuit has decided that the distinction was irrelevant because the policies in question survived even strict scrutiny. *Id.* at 1203 ("We need not decide whether a city council meeting is a designated public forum or a limited public forum, however, as the time limitation on [the plaintiff's] speech satisfies the more stringent strict scrutiny standard."); *see also Griffin v. Bryant,* 677 F. App'x 458, 462 n.7 (10th Cir. 2017) ("Because we conclude that [the plaintiff] was not restrained from speaking during the Council meeting and that the time limit on his speech during the Public Input portion of the meeting satisfies the strict scrutiny standard ... we need not decide whether the Council meeting is a designated public

16

forum or a limited public forum."). However, the Tenth Circuit "has offered 'three non-exhaustive factors to consider in determining whether the government has created a designated public forum' instead of a limited public forum: (1) the forum's purpose; (2) the extent of the forum's use; and (3) the government's intent in opening the forum to the public." *Celebrity Attractions, Inc. v. Okla. City Pub. Prop. Auth.,* 660 F. App'x 600, 605 (10th Cir. 2016) (*quoting Doe v. City of Albuquerque,* 667 F.3d 1111, 1129 (10th Cir. 2012)). Courts "will not find that a public forum has been created in the face of clear evidence of contrary intent," or when "the nature of the property is inconsistent with expressive activity." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.,* 473 U.S. 788, 803 (1985).

*Spiehs,* 728 F. Supp. 3d at 1207–09.

Pursuant to this analysis, it is required that the Court determine whether the Public Works and Safety Committee meeting is a designated or limited public forum.

> The Union's Memorandum in Support of the TRO, makes the conclusory declaration that,
>
> The recurring Public [Works and] Safety Committee meeting is a designated public forum. [H]ere, the UG has explicitly opened the Public [Works and] Safety Committee meetings to the public for comment. And because the government seeks to exclude the Union from the otherwise open meeting space, its actions are subject to strict scrutiny. [citing *Shero* in support].

Doc. # 5 at pg. 11.

Notably, the Union fails to acknowledge that the 10th Circuit has determined that city council meetings, depending on the relevant supporting facts, may be deemed to be either a designated public forum or a limited public forum – the two categories requiring differing legal analyses. Additionally, Plaintiff has failed to proffer sufficient evidence to enable this Court to adjudicate the factors necessary for a determination as to which category of forum the Public Works and Safety Committee falls into which factors include: (1) the forum's purpose; (2) the extent of the forum's use; and (3) the government's intent in opening the forum to the public. Finally, the Union fails to address whether the two policies which have effectively precluded the Plaintiff from

17

addressing its concerns before the Public Safety Committee meet legal scrutiny under the standards of the applicable forum.  These two policies are: (1) the requirement that public comments are germane to the agenda item being discussed; and, (2) the right of the Unified Government to set its agenda items.

### b. Germaneness requirement.

Germaneness requirements at city council meetings have consistently been upheld by decisions of Courts within this District.  In *Scroggins v. City of Topeka,* 2 F. Supp. 2d 1362 (D. Kan. 1998), the City adopted a germaneness restriction as well as restriction prohibiting personal and slanderous remarks.  The *Scroggins* Court provided the following rationale in sustaining the Constitutionality of the germaneness requirement,

> Several courts, including the Supreme Court, have recognized the government's significant interest in conducting orderly, efficient, effective and dignified meetings of its public bodies. *See, e.g., City of Madison,* 429 U.S. at 175 n. 8, 97 S.Ct. 421; *Kindt v. Santa Monica Rent Control Bd.,* 67 F.3d at 271 (board has "legitimate interest in conducting efficient, orderly meetings."); *White v. City of Norwalk,* 900 F.2d at 1425 ("City Council meeting is still just that, a governmental process with a governmental purpose."); *Jones v. Heyman,* 888 F.2d at 1332–33 (City Commission has significant governmental interest "in conducting orderly, efficient meetings.") (later abrogated); *Devine v. Village of Port Jefferson,* 849 F. Supp. 185, 190 (E.D.N.Y.1994) (village board has "a significant interest in conducting its meeting in an orderly and effective fashion."); *Godwin v. East Baton Rouge Parish School Bd.,* 408 So.2d 1214, 1218 (La.1981) (school "board's interest in conducting its meetings in an orderly and dignified manner is a substantial consideration and a valid governmental objective."), appeal dismissed, *1373, 459 U.S. 807, 103 S.Ct. 31, 74 L.Ed.2d 45 (1982); *State v. Smith,* 46 N.J. 510, 517, 218 A.2d 147, 150 (sustained disorderly conduct convictions for disturbances during city council meeting. "Whether the forum be the courtroom or the chamber of the legislature itself or of a political subdivision of the State, there must be order. It is frivolous to suggest the First Amendment stands in the way of that imperative."), *cert. denied,* 385 U.S. 838, 87 S.Ct. 85, 17 L.Ed.2d 71 (1966). The Supreme Court in *City of Madison* recognized that public bodies obviously "may confine their meetings to specified subject matter." 429 U.S. at 175 n. 8, 97 S.Ct. 421. Justice Stewart in his concurrence added that public bodies have "broad authority to structure the discussion of matters that it chooses to open to the public." 429 U.S. at 180, 97 S.Ct. 421.

In *White,* the Ninth Circuit analyzed in some detail this significant governmental interest:

[A] City Council meeting is still just that, a governmental process with a governmental purpose. The Council has an agenda to be addressed and dealt with. Public forum or not, the usual first amendment antipathy to content-oriented control of speech cannot be imported into the Council chambers intact. In the first place, in dealing with agenda items, the Council does not violate the first amendment when it restricts public speakers to the subject at hand. *Madison School Dist.,* 429 U.S. at 175 n. 8, 97 S.Ct. 421; *see Cornelius v. NAACP Legal Defense & Educ. Fund,* 473 U.S. 788, 802, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985) (public forum may be created by government designating "place or channel of communication ... for the discussion of certain subjects"). While a speaker may not be stopped from speaking because the moderator disagrees with the viewpoint he is expressing, *see Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 60–61, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983) (Brennan, J., dissenting), it certainly may stop him if his speech becomes irrelevant or repetitious.

Similarly, the nature of a Council meeting means that a speaker can become "disruptive" in ways that would not meet the test of actual breach of the peace, (citation omitted), or of "fighting words" likely to provoke immediate combat. (citation omitted). A speaker may disrupt a Council meeting by speaking too long, by being unduly repetitious, or by extended discussion of irrelevancies. The meeting is disrupted because the Council is prevented from accomplishing its business in a reasonably efficient manner. Indeed, such conduct may interfere with the rights of other speakers.

900 F.2d at 1425–26. The reasoning of this case and the others cited above persuades this court that the Council's interest in conducting orderly, efficient, and dignified meetings and in preventing the disruption of those meetings is a significant governmental interest. All of these cases plainly recognize an important governmental interest in limiting comments to matters directly relevant to that governmental body's business.

*Scroggins,* 2 F. Supp. 2d at 1372-1373; *See also, Eravi v. Owens,* 2026 WL 1551751 (D. Kan. 2026) (Upholding germaneness requirement for public comments at City of Lawrence city commission meetings); *Spiehs v. Larsen,* 728 F. Supp. 3d 1190, 1204-06 (D. Kan. 2024) (Similarly upholding germaneness requirements for public comments at City of Lawrence city commission meetings).

The *Scroggins* Court also found that the two rules for public comments, including the germaneness requirement were narrowly tailored to achieve the governmental interest in

19

conducting orderly, efficient, and dignified meetings and in preventing the disruption of those

meetings.

> To be narrowly tailored, the court need not find that the regulation was the least restrictive or least intrusive means for doing so. *Ward,* 491 U.S. at 798, 109 S.Ct. 2746. "Rather, the requirement of narrow tailoring is satisfied 'so long as the ... regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.' " *Ward,* 491 U.S. at 799, 109 S.Ct. 2746 (quoting *United States v. Albertini,* 472 U.S. 675, 689, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985)). The court believes that the Council rules at issue plainly promote a substantial government interest in orderly, efficient, and dignified meetings and that without these rules the Council's ability to conduct such meetings would be compromised.

*Id.* at 1374.

Similarly in *Gilmore v. Beveridge,* 2022 WL 3139023 (D. Kan. 2022) the Court upheld a

germaneness requirement relating to public comments at Olathe, Kansas School Board meetings

stating as follows:

> Plaintiff primarily challenges the statement in the Revised Policy limiting public comments to those topics "germane to the business of the Board." The Court finds this is not an unreasonable limitation in a limited public forum during a school board meeting, nor does it limit any particular viewpoint on its face. "Plainly, public bodies may confine their meetings to specified subject matter ...." *City of Madison, Joint Sch. Dist. No. 8 v. Wis. Emp. Relations Comm'n,* 429 U.S. 167, 175 n.8 (1976); *see also Smith,* 2011 WL 3859738, at *5 (finding that "restriction of public comment to items on the agenda is also reasonable because it serves to confine the forum 'to the limited and legitimate purposes for which it was created'—in this case, facilitating the official business of the Council"). Thus, limiting topics to those "germane to the business of the Board" is a reasonable and facially viewpoint-neutral limitation in this context.

*Id.* at 6.

Notably in *Gilmore*, the Court cited with approval the case of *Smith v. City of Middletown,* which

upheld a germaneness requirement limiting public comment to topics on the agenda, which policy

is aligned with the Unified Government's policy at the Public Works and Safety Committee

limiting public comment to the topics on the agenda. *Id.*

### c. Setting of agenda for the conduct of business.

It is critical to note that, unlike any other case cited by the Plaintiff in support of its request for a TRO and Preliminary Injunction, Plaintiff not only demands that it be allowed to speak at the Public Works and Safety Committee meeting, but Plaintiff demands that the Unified Government actually create an agenda item and allow the Plaintiff to make a presentation. In other words, the Plaintiff doesn't just want their voice to be heard at the Public Works and Safety meeting, rather the Plaintiff wants to dictate to the Unified Government the business that the Committee actually conducts. The 10th Circuit rejected the same demand in *Griffin v. Bryant,* 677 Fed. Appx. 458 (10th Cir. 2017). There, as is likely the case here, the Plaintiff wanted to be placed on the agenda due to the time limitation placed on public comments of 5 minutes per speaker during the public comment period. *Id.* at 461. In rejecting the plaintiff's demand to be placed on the agenda, the Court cited the following in support of its ruling,

> As the Supreme Court has explained, "the First Amendment does not guarantee the right to communicate one's views at all times and places or in any matter that may be desired." *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.,* 452 U.S. 640, 647, 101 S. Ct. 2559, 69 L.Ed.2d 298 (1981).

*Id.* at 462.

The Unified Government Municipal Code at Appendix C at Article II prescribes the procedure to be followed by the standing committees of the Unified Government, including the Public Works and Safety Committee. Ex. 8, Appx. C to UG Code. Relative to the setting of the agenda for these standing committees, the Code provides as follows:

> **Sec. 202 Standing committees created; meeting times.**
> . . .
> g.  Standing committee agenda items shall be assigned by the standing committee chairperson or the mayor, with the advice of the administrator, based upon subject matter and other factors deemed relevant by the mayor and the administrator;

**Sec. 209.  Agenda items.**
Items to be presented to standing committees for discussion and/or action shall be submitted to the standing committee chairperson either directly or through the staff coordinator prior to the date of the meeting at which items are to be taken up:

.  .  .

b.      The mayor, with the advice of the administrator, shall assign the item to an appropriate standing committee during a regular agenda review meeting based upon the subject matter of the item and other relevant factors;

Ex. 8, Appx. C to UG Code.

Consistent with the foregoing case law, the Unified Government retains the right to set agenda matters for its consideration and for the efficient operation of its standing committees.

Finally, relative to anticipated responsive complaints from the Plaintiff relating to time limitations as part of public comment restrictions of the Unified Government, the 10th Circuit has upheld such time restrictions.  In *Shero v. City of Grove,* 510 F.3d 1196, 1203 (10th Cir. 2007), the 10th Circuit held that a three-minute time limitation imposed upon speakers at a city council meeting was a "restriction appropriately designed to promote orderly and efficient meetings."  The *Shero* Court also found it persuasive that speaking at city council meetings was not the exclusive forum for the plaintiff to exercise their free speech rights noting that "In addition, Mr. Shero had ample alternative channels of communication available to him and utilized them by, among other things, appearing in a local newspaper and circulating flyers."[2] *Shero v. City of Grove,* 510 F.3d 1196, 1203 (10th Cir. 2007); *accord Griffin v. Bryant,* 677 Fed. Appx. 458, 461-62 (10th Cir. 2017) (5 minute time limit on public comment was Constitutional).

---

[2] As reflected by the photos of the past posts of the Plaintiff on its Facebook page, Plaintiff has been highly active on social media expressing its concerns regarding staffing. Link: https://www.facebook.com/people/KCK-Professional-Firefighters-Association/100064730981267/?sk=photos

22

## C.  **Qualified Immunity**

It is unclear from the face of the Plaintiff's Complaint whether the Plaintiff is intending to sue each and every individual member of the Unified Government Commission individually or not. *See* Doc. # 1, ¶ 3 (Naming Board of Commissioners separately from the Unified Government and indicating that the Board is "comprised of the Mayor/CEO and ten Commission members."). If the Plaintiff's Complaint is construed to individually name the members of the Commission, then such Commission members assert qualified immunity.  Another case involving plaintiff, Justin Spiehs, but this time naming the Douglas County Commission and individual Commissioners came before Judge Robinson last year in *Spiehs v. Armbrister, et al.,* 2025 WL 548423 (D. Kan. 2025).  Like the public comment restrictions of the City of Lawrence, the public comment section of the Douglas County Commission included decorum and germaneness requirements. In addressing the claims against the individual defendants, elected members of the County Commission, Judge Robinson, dismissed such claims on the basis of qualified immunity.

> To overcome qualified immunity, Plaintiff must also show that the public-comment policies violated clearly established law. To determine whether law is clearly established, the Court asks if "the right [was] sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Mecham v. Frazier,* 500 F.3d 1200, 1205–06 (10th Cir. 2007) (*quoting Medina v. Cram,* 252 F.3d 1124, 1128 (10th Cir. 2001)). "'General statements of the law are not inherently incapable of giving fair and clear warning' to officers, but 'in the light of pre-existing law the unlawfulness must be apparent.'" *White v. Pauly,* 580 U.S. 73, 79–80 (2017) (citation omitted) (*first quoting United States v. Lanier,* 520 U.S. 259, 271 (1997); *and then quoting Anderson v. Creighton,* 483 U.S. 635, 640 (1987)).  The Tenth Circuit requires the following before declaring a law to be clearly established: (1) "a Supreme Court or Tenth Circuit decision on point," or (2) a showing that "the clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains." *Fancher v. Barrientos,* 723 F.3d 1191, 1201 (10th Cir. 2013) (*quoting Casey v. City of Federal Heights,* 509 F.3d 1278, 1284 (10th Cir. 2007)).
>
> Plaintiff contends that the individual defendants violated clearly established law by enforcing the public-comment policies, which, he argues, are viewpoint-based restrictions under clearly established law. Though Plaintiff's argument on the

clearly-established prong is far from clear, the Court construes it as arguing that the policies are viewpoint discriminatory and, in the alternative, are content based. If Plaintiff is correct, then the public-comment policies fail even if the meetings were limited public forums because restrictions in a limited public forum must be viewpoint neutral. Plaintiff argues that the prohibition on campaigning and the decorum requirement are viewpoint based under clearly established law. But even assuming that the public-comment policies are viewpoint-based restrictions, Plaintiff does not show that the proposition is clearly established. He points to no on-point Supreme Court or Tenth Circuit authority. In fact, he points to no authority at all on whether a prohibition on campaigning is viewpoint based. Instead, he attempts to show a clearly established weight of authority from other courts with a handful of district-court opinions. Those cases cannot support clearly established law. First, citing a smattering of marginally relevant district-court opinions is far from showing a general weight of authority on the issue. [citations omitted]. Second, Plaintiff cites these cases for very general propositions of law. [footnote omitted]. But, as the Supreme Court has instructed, a court should not "define clearly established law at a high level of generality" and a "general proposition ... is of little help" in the clearly-established inquiry. *Ashcroft v. al-Kidd,* 563 U.S. 731, 742 (2011). One of the cases Plaintiff cites even acknowledges that whether a decorum standard like the one here is viewpoint based is a "difficult question" and several courts have answered the question differently. *MacQuigg v. Albuquerque Pub. Schs. Bd. of Educ., No. 12-1137,* 2015 WL 13659218, at *4–5 (D.N.M. Apr. 6, 2015).

Alternatively, Plaintiff appears to argue that the individual Defendants violated clearly established law because the public-comment policies are content based, and so, because the forum is a designated public forum, they must survive strict scrutiny. And, according to Plaintiff, it is clearly established that they do not. Again, Plaintiff fails to shoulder his burden to show clearly established law. Plaintiff once more offers broad propositions of law like "[t]here are no speech restrictions in a public forum except for the well-known fire-in-the-theatre type." But that general proposition ignores the more fundamental question here: whether the Commission meetings are a designated public forum in which content-based speech restrictions are subject to strict scrutiny. And Plaintiff all but concedes that this is not clearly established: "The Tenth Circuit in *Shero v. City of Grove*, has declined to de facto rule that all Commission meetings are either designated public forum [sic] or a limited one." Instead, he invites the Court—given what he describes as an "open question of law"—to "assume it is a public forum subject to strict scrutiny." Plaintiff has fallen far short of demonstrating that the law clearly established that the Commission meetings were a designated public forum in which content-based restrictions must pass strict scrutiny, rather than the more lenient scrutiny for limited public forums.

Because the individual Defendants—by enforcing the public-comment policies at a Commission meeting—did not violate Plaintiff's clearly established right, the individual Defendants are entitled to qualified immunity on Claims I and II. The Court grants the individual Defendants' motions to dismiss on these claims.

24

*Spiehs,* 2025 WL 548423 at 7-9.

A similar result should result in the case at bar.

### D.  Right to Petition and to Associate.

Plaintiff's Memorandum in Support of its Motion for TRO and Preliminary Injunction makes no mention of its First Amendment right to petition and associate as asserted in its Complaint.  Neverless, out of an abundance of caution, Defendants will address the same now. This Court dealt with the parameters of these First Amendment rights in a case which is factually analogous to the present case in *Grand Design Golf, Ltd. v. Glinstra,* 112 F. Supp. 2d 1098 (D. Kan. 2000).  In *Glinstra,* two individuals associated with a golf course management company scheduled a meeting with two City of Olathe city council members to discuss potentially taking over management of the city owned golf course. *Id.* at 1101.  *Glinstra,* the city attorney, directed the Council members to cancel the meeting because of pending litigation over the management of the golf course. *Id.*  The golf course management company sued the City, Glinstra and others asserting they were denied their First Amendment right to petition the government for redress of grievances due to the cancellation of the meeting with the two elected members of the city council. *Id.* at 1102.  Summarizing the Plaintiff's claims, the Court stated, "plaintiffs contend that they have a constitutional right to plead their case (i.e., their proposal to redevelop the golf course) on terms of their own choosing. *Id.* at 1102.  In rejecting these claims, the Court held as follows,

> As the Supreme Court has held, however, "[t]he Constitution does not grant to members of the public generally a right to be heard by public bodies making decisions of policy." *Minnesota State Bd. for Community Colleges v. Knight,* 465 U.S. 271, 283, 104 S.Ct. 1058, 79 L.Ed.2d 299 (1984). According to the Court:
>
> Policymaking organs in our system of government have never operated under a constitutional constraint requiring them to afford every interested member of the public an opportunity to present testimony before any policy is adopted. Legislatures throughout the nation, including Congress, frequently enact bills on which no hearings have been held or on which testimony has been received from only a select group. Executive agencies likewise make policy decisions of widespread application without permitting unrestricted public testimony. Public

25

officials at all levels of government daily make policy decisions based only on the advice they decide they need and choose to hear. To recognize a constitutional right to participate directly in government policymaking would work a revolution in existing government practices.... Government makes so many policy decisions affecting so many people that it would likely grind to a halt were policymaking constrained by constitutional requirements on whose voices must be heard.

*Id.* at 284–85, 104 S.Ct. 1058. After analyzing both policy and precedent, the Supreme Court found that "[n]othing in the First Amendment ... suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues." *Id.* at 285.

*Glinstra,* 112 F. Supp. 2d at 1102.

Plaintiff's Motion for TRO and Preliminary Injunction does not support a substantial likelihood of success on the merits relative Plaintiff's First Amendment petition and association claims.

## III.    IRREPERABLE HARM.

Plaintiff asserts that it would suffer irreparable harm because,

The UG is set to finalize its budget for 2027 on September 1, 2026, and if the UG is allowed to continue denying the Union the right to speak, the budget will be approved without the Commissioners having the opportunity to consider the Union's health and safety concerns and how those concerns can be alleviated through the allocation of funds to the KCKFD.

Doc. #5 at pg. 13.

This statement is simply untrue. All local governments are required to have public hearings as part of their budget approval process. Because the Unified Government is a unified city and county government, it is required to hold two public hearings. These public hearings have been scheduled for August 24 before the Unified Government Commission at 5:30 p.m.. Ex. 9, City Notice, Ex. 10, County Notice. Provided that the Plaintiff intends to offer comments that are germane to the budget discussion, and subject to the time limitation on public comments adopted by the Unified Government Commission, the Plaintiff is free to come and voice its concerns regarding the Unified Government's proposed budget. Indeed, it is the Unified Government Commission, not the Public

26

Works and Safety Committee that makes the ultimate determination on the budget. In light of this opportunity available to Plaintiff, Plaintiff cannot suffer its claimed irreparable harm.

Additionally, it must be noted that the Unified Government offered, through counsel's letter of May 12, 2026, to meet and confer in good faith with the representatives of the Unified Government designated by the UG to engage in meet and confer negotiations with the Plaintiff. Doc. 6-11, May 12, 2026 Letter. This was offered in both the opening and closing paragraphs of this correspondence, closing with the following sentence, "If you would like to schedule a formal meet and confer session, please let us know and we will proceed with scheduling the same." *Id.* The Unified Government never received a response to this letter and the Plaintiff never requested to meet and confer relating to the subject of staffing. Rather, the Plaintiff waited three months and then filed a lawsuit along with a request for an emergency TRO due to the timing of the last Public Works and Safety Subcommittee meeting. Timing that is entirely driven due to Plaintiff's failure to engage in meet and confer as well as Plaintiff's undue delay.

## IV. <u>CONCLUSION</u>.

Premised upon the facts, arguments and legal authority stated herein, the Defendants request that this Court deny the Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction.

27

Respectfully submitted,

McANANY, VAN CLEAVE & PHILLIPS, P. A.
10 E. Cambridge Circle Dr., Suite 300
Kansas City, KS 66103
(913) 371-3838
(913) 371-4722 FAX
rdenk@mvplaw.com

By: /s/ *Ryan B. Denk*
    Ryan B. Denk          #18868

*Attorneys for Defendants Unified Government of*
*Wyandotte County / Kansas City, Kansas and*
*UG Board of Commissioners*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 11, 2026, this document was electronically filed with the Clerk of the Court using the CM/ECF system, which notifies counsel of record of such filing and a copy is being mailed to:

Jacob Miller
Grissom Miller Law Firm, LLC
1600 Genessee Street, Ste. 460
Kansas City, MO 64102
jake@grissommiller.com

Tamara Y. Imam, *Admitted Pro Hac Vice*
Mooney, Green, Saindon, Murphy & Welch, P.C.
1620 Eye Street NW, Suite 700
Washington, DC 20006
timam@MOONEYGREEN.COM

*Attorneys for Plaintiff*

                                    /s/ *Ryan B. Denk*

28